UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GO NEW YORK TOURS INC. d/b/a "Topview",  <br><br> Plaintiff,  <br><br> -against-  <br><br> VECTOR MEDIA, LLC, SPIRE CAPITAL MANAGEMENT, LLC,  <br><br> Defendants. | Case No. 19-cv-  <br><br><br> **COMPLAINT**  <br><br><br> **JURY TRIAL DEMAND** |

Plaintiff Go New York Tours, Inc. ("Plaintiff" or "Go New York"), by and through its undersigned counsel, hereby alleges, as against defendants Vector Media, LLC ("Vector Media") and Spire Capital Management, LLC ("Spire Capital"), (collectively "Defendants"), as follows:

### NATURE OF THE ACTION

1.      This is an action for antitrust violations against Vector Media and the private equity firm that runs it, Spire Capital. Defendants have monopolized the market for the sale of advertising on double-decker tour buses. Defendants' total market power in violation of Federal and State antitrust laws is irrefutable. Vector Media is the self-proclaimed "only coast-to-coast double decker advertising network in North America."[1] It has been reported that "now when one thinks of [a] Double Decker Bus its more likely than not, a Vector Bus or assumed that any DD is Vector's."[2]

2.      Defendants have achieved a monopoly on this market through various, ongoing, intentional anticompetitive acts described in detail below. These acts include targeting and

---

[1] https://vectormedia.com/press-release-laurel-outdoor/.

[2] https://oohtoday.com/vector-media-acquires-direct-media-now-50-market-coverage/.

fraudulently inducing every major double-decker tour bus company which compete for the same business in major tourist destinations across the United States and abroad.

3.      By falsely representing that Vector Media will be each company's "business partner" and use its best efforts to sell adverting space on each company's bus fleets and pay it an annual revenue share, Vector Media has obtained exclusive licenses to sell all of the advertising the major double-decker tour bus companies that compete with one another in major tourist destinations both in the United States and abroad.   Therefore, any company seeking access to this market must go through Vector Media.  Meanwhile, the tour bus companies that were promised that Vector Media would partner with them to maximize revenue to both of their benefit have lost millions of dollars in advertising revenue that they could have earned but for Defendants' monopoly on this market.

4.      Fully aware of Vector Media's strategy to create a monopoly on this market, Spire Capital purchased the majority share of the company in Vector Media and conspired with it to further its monopolization by funding acquisitions of any other advertising company, big or small, that dares to compete with them in this market

5.      Defendants' monopoly has caused and continues to cause serious harm to companies seeking to advertise in this unique space and the double-decker tour bus companies that own this advertising space. As the single major company with access to this unique market space, Vector Media is able to set, maintain and control exorbitant rates for this advertising.  Any company that is unwilling or unable to pay these rates demanded by Defendants is locked out of the market for this advertising completely.  This is classic illegal price fixing.

6. Defendant Vector Media, with the assistance of Spire Capital since November 30, 2016, has sought and obtained complete control over the market for advertising on double-decker tour buses in major tourist destination cities across the United States.

7. Having obtained a stranglehold on all advertising space on every double-decker tour bus company in major cities nationwide, including New York City, Vector Media is able to dictate and artificially inflate the rates for all of the advertising space on double-decker tour buses, which includes advertising on the exteriors and interiors of the buses, and special LED light, illuminated advertising.

8. Defendants' unlawful control and domination of the discrete market for advertising on double-decker tour bus companies causes serious harm to companies seeking to place advertising on the buses who are unable or unwilling to pay exorbitant rates set by Vector Media for the advertising, particularly smaller companies who are locked out of the market entirely because they cannot pay the rates dictated by Defendants.

9. Defendants' unlawful control and domination of the discrete market for advertising on double-decker tour bus companies also causes serious harm to the tour bus companies which own and operate these buses in major cities across the United States.

10. Specifically, Defendants have courted the top tour bus companies in major cities across the country and locked them into long-term exclusive licensing deals by claiming that the tour bus companies would be Vector Media's "business partners" and would work together to generate the most revenue for both sides from advertising sales. In fact, however, the tour bus companies are just pawns in Defendants' game to monopolize this industry and engage in illegal price fixing. Vector Media executives refer to this as its "market share" and, as described herein, they go to great lengths to maintain their monopoly on this discrete market.

11.   Defendants' antitrust conspiracy has caused direct harm to Plaintiff Go New York, one of the three major double-decker tour bus companies operating in New York City, along with Gray Line New York ("Gray Line") and Big Bus New York ("Big Bus").

12.   Plaintiff Go New York has been deprived of millions of dollars of revenue it could have generated from advertising space on its buses as a result of Defendants' anticompetitive practices.  A full two-thirds (2/3) of advertising space on Go New York's fleet of of buses, which has grown to more than 40 buses over the past seven years, has remained empty for the duration of Go New York's licensing agreement with Vector Media that Vector Media can maintain its "market share," i.e. monopoly, on all advertising space on every double-decker tour bus company in New York City and dictate rates for such advertising.   Defendants' blockade on this market is also detrimental to the economy as a whole.  Businesses are being deprived of a means to advertise goods and services for sale just so Defendants can maintain a monopoly on this market, resulting in further restraint of trade.

13.   After years of losing millions of dollars in revenue and failing to receive any reasonable response to its inquiries about why advertising revenue was inexplicably decreasing while potential advertising opportunities were increasing, Go New York decided to terminate the agreement granting Vector Media an exclusive license to all advertising on its fleet of buses on July 14, 2019.

14.   In response, Vector Media commenced an action in the Commercial Division of New York Supreme Court, New York County alleging breach of contract and simultaneously sought and obtained a temporary restraining order and then preliminary injunction to force Go New York to stay in a disadvantageous contractual arrangement just so Vector Media could maintain its monopoly on the discrete market of advertising on double-decker tour buses.  Vector

Media obtained this extraordinarily injunctive relief by having its executives make misleading and false claims to the Court that Vector Media's business would be irreparably harmed by a run-of-the-mill contract termination.   Specifically, Vector Media claimed that it would suffer irreparable harm if Go New York terminated the agreement because Vector Media would lose its "market share", i.e. monopoly, over the discrete market for advertising on tour bus companies. Vector Media's lawsuit and representations to the Supreme Court were part and parcel of Defendants' concerted effort to obtain a complete monopoly over the market for advertising on double-decker tour buses and continue their anticompetitive activities.   Go New York has filed a Notice of Appeal seeking to lift the preliminary injunction.

15.     Defendants' anticompetitive activities also include the acquisition of numerous companies, both large and small, that have attempted to compete with Vector Media in an effort to completely eliminate any competition in this market.

16.     Defendant Spire Capital was aware of Vector Media's anticompetitive activities at the time it invested in Vector Media on November 30, 2016.   Since then, Spire Capital has conspired with Vector Media and furthered its anticompetitive activities to obtain a complete monopoly over the discrete market for advertising on double-decker tour buses in major cities across the United States.   In particular, Spire Capital has financed the acquisition of numerous smaller competitor companies of Vector Media and stocked Vector Media's Board of Directors with executives from Spire Capital to exert control over Vector Media and further its anticompetitive activities.

17.     In sum, Defendants are engaged in unfair methods of competition and unfair and deceptive acts and practices by which they have obtained market power over the discrete market of  advertising on double-decker tour bus companies such that they have obtained a monopoly

over this market that is impermissible under Federal and New York State law and New York State common law.

18.     Plaintiff Go New York brings claims against Vector Media for violations of Section 1 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 1, 15 and violations of Section 2 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 2, 15.

## PARTIES

19.     Plaintiff Go New York is a New York corporation with a principal place of business at 2 East 42nd Street, New York, New York 10017.

20.     Defendant Vector is a New York limited liability company with a principal place of business at 560 Lexington Avenue, New York, New York 10022.

21.     Defendant Spire Capital is a Delaware limited liability company with its principal place of business located at 1500 Broadway, Suite 1811, New York, New York 10036.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States) and 15 U.S.C. § 15 (action arising under Sherman and Clayton Acts).

23.     Jurisdiction is proper over defendant Vector because it is a New York limited liability company and maintains its principal offices in New York, New York.

24.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 (b)(1)-(2) and (c)(2) because Vector either has its offices and/or regularly transacts business in this district and is subject to personal jurisdiction in this district, and a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## STATEMENT OF FACTS

25.     Plaintiff Go New York owns and operates a fleet of double-decker, "hop on, hop off" sightseeing tour buses in New York City under the brand name "TopView." Hop-on, hop-off sightseeing tour buses travel routes through areas of interest to tourists who can "hop-off" a bus at a place or attraction of interest to them, and then "hop-on" another bus of the same company to continue their tour.

26.     Plaintiff Go New York is just one of three "hop-on, hop-off" sightseeing tour bus businesses presently operating the New York City market, along with Gray Line and Big. Until recently, Go New York was the smallest of the three operations, in terms of both revenues and the number of buses in its fleet. Today, Go New York's, Gray Line's and Big Bus's double-decker tour buses are ubiquitous on New York City streets. They are direct competitors.

27.     Plaintiff Go New York began its operations in 2012, doing business under the name of "Go New York Tours" with four double-decker sightseeing buses, and has since increased its fleet to over 40 buses and expanded its tourist offerings to include boat tours, bicycle rentals, and other tourist-orientated services.

28.     Defendant Vector Media specializes in "out-of-home" media advertising, or "OOH." One of the main channels for OOH advertising is large-format transit advertising. Large-format transit advertising includes interior and exterior advertising on buses, trains and trolleys as well as bus shelters. It includes full "wrapping" of buses in advertising. It also includes special illuminated, LED advertising.

29.     The founder and former CEO of Vector Media is William Schwartz.

30.     The current Chief Executive Officer of Vector Media is Marc Borzykowski.

31.     The current Chief Operating Officer of Vector Media is Chad Silver.

32.     Defendant Vector Media touts itself as "is the only coast-to-coast double-decker advertising network in North America."

33.     Upon information and belief, Defendant Vector Media generates annual revenue of approximately $70 million and there is no other company that competes with Vector Media in the discrete market for advertising sales on double-decker tour bus companies that generates even a fraction of that revenue.  As set forth below, Defendants have engaged in a market strategy to swallow up any and all small competitor companies to ensure that it maintains its "market share" which is nothing more than a monopoly on this industry.

34.     Upon information and belief, Defendant Vector Media controls large-format transit advertising in at least 27 of the top 35 media markets in the United States, including which is comprised of inventory in New York, Chicago, Los Angeles, Las Vegas, Philadelphia, San Francisco, Boston, Washington, D.C., Houston, Miami, San Diego, San Antonio, Austin and Dallas.

35.     Defendant Spire Capital is a private equity firm that invested in Vector Media on November 30, 2016.  Spire Capital specializes in investments in "small market companies" in the media and communications sector.

36.     After Spire Capital acquired Vector Media on November 30, 2016, one of its general partners, Andy Armstrong ("Armstrong"), became Chairman of Vector Media's Board of Directors.

37.     Additionally, after Spire Capital acquired Vector Media on November 30, 2016, a principal at Spire Capital, Anthony Cassano ("Cassano"), joined the Board of Directors of Vector Media.

38.     Additionally, after Spire Capital acquired Vector Media on November 30, 2016, a Vice President at Spire Capital named Kerri McNicholas ("McNicholas") joined Vector Media's Board of Directors.

39.     At the time that Spire Capital acquired Vector Media on November 30, 2016, its principals knew that Vector Media maintained a monopoly over the discrete market for advertising on double-decker tour buses in the major tourist destination cities in the United States.

40.     In fact, Armstrong stated publicly that Spire Capital was "excited to partner with" Vector Media because of its "unique OHH advertising platform" and its ability to provide "one of a kind, large format spectacular campaigns for some of the best brands and agencies in the world."

41.     Additionally, the advisor to Vector Media on its sale to Spire Capital, Mark Boidman of Peter J. Soloman Company, marketed and sold Vector Media to Spire Capital on the strength of Vector Media's "unique" OHH platform and "unparalleled" media platform.

42.     Less than six months prior to Spire Capital's acquisition of Vector Media on November 30, 2016, Vector Media reported that it formed a "strategic partnership" with Great Bus Advertising/GQuadro to "Create the World's Largest Inventory of the Highly Sought-after Double Decker Bus Ad Format." It was reported in the press that the deal provided Vector Media with "an additional inventory of 800 double-decker buses in 90 Global Markets."

43.     Since it acquired Vector Media on November 30, 2016, Defendant Spire Capital has conspired with Defendant Vector Media to obtain a complete monopoly over the discrete market for advertising on double-decker tour buses in major cities across the United States.

Among other things, Spire Capital has financed the acquisition of numerous smaller competitor companies of Vector Media in an effort to completely eliminate any competition in this market.

44.     Since it acquired Vector Media on November 30, 2016, Defendant Spire Capital has assisted and furthered Vector Media's goal to complete monopolize the "market share" of advertising on double-decker tour buses in major cities across the United States.  Among other things, Spire Capital has financed Vector Media's acquisition of numerous smaller competitor companies of Vector Media in an effort to completely eliminate any competition in this marker.

45.     Defendant Vector Media, with the assistance of its main investor, the private equity firm of Spire Capital, has sought and obtained complete control over the market for advertising on double-decker tour buses so that it can dictate and artificially inflate the rates it charges its clients which amounts to nothing more than illegal price fixing.  Additionally, by completely dominating the market, Defendants can charge exorbitant rates for one-time advertising events such as running fully wrapped buses during the 2019 Women's World Cup Victory Parade.

46.     Upon information and belief, Defendant Vector Media, in concert with Spire Capital, has also sought to and has obtained long-term exclusive licensing deals with Gray Line and Big Bus similar to its agreement with Go New York so that it can control and dominate the entire market for advertising on double-decker tour buses in New York City.  Again, Vector Media executives refer to this as its "market share."   As a result of this anti-competitive behavior that is anathema to antitrust law, Defendants maintain a monopoly over the sale of advertising on double-decker buses in tourist destination cities.  Indeed, it has been reported that

"now when one thinks of [a] Double Decker Bus its more likely than not, a Vector Bus or assumed that any DD is Vector's."[3]

47.     Having obtained a stranglehold on all advertising space on every double-decker tour bus company in major cities nationwide, including New York City, Vector Media is able to set the rates for all of the advertising space on double-decker tour buses, which includes advertising on the exteriors and interiors of the buses, and special LED light, illuminated advertising. This kind of advertising is particularly desirable for special promotional campaigns associated with world-wide events such as the Super Bowl, the World Series, the Women's World Cup, the Gay Pride Parade, blockbuster movie releases, and the like.

48.     By controlling the discrete market of double-decker tour bus companies in major cities across the country, Vector Media is able to engage in illegal price fixing of the rates charged for this special, lucrative and desirable advertising to the extreme detriment of both the companies seeking to place advertising on the buses (its clients) and the tour bus companies which own and operate these buses (its' supposed "business partners").

49.     In the case of Plaintiff Go New York, as a result of Defendant Vector Media's anti-competitive actions, Go New York has been deprived of millions of dollars of revenue that it could have earned on advertising space that went unused over the last seven years just so that Vector Media could maintain a monopoly on double-decker tour bus advertising in New York City and/or so that Vector Media could funnel potential advertising on Go New York's buses to its competitors who, upon information and belief, Vector Media has more favorable licensing deals with such that Vector Media would earn a greater percentage of the net advertising revenue.

---

[3] https://oohtoday.com/vector-media-acquires-direct-media-now-50-market-coverage/.

50.     As a result of Defendants' anti-competitive acts, more than two-thirds of Go New York's advertising space has gone unused.  This is to the extreme detriment of Go New York, who would have earned 50% of the net advertising revenue from these sales and reinvested that revenue into its business operations and stay competitive with other double-decker tour bus companies like Big Bus and Gray Line.

51.     Additionally, Defendants' anti-competitive acts have harmed Vector Media's clients in that they have been charged exorbitant rates if they want to advertise on double-decker tour buses at all because the market is dominated and controlled by Vector Media and/or been deprived of advertising opportunities if they are unable or unwilling to pay inflated rates.

52.     Additionally, Defendants' anti-competitive acts have created an illegal restriction on the discrete market for advertising sales on double-decker tour buses.  Smaller companies that may not be able to pay the exorbitant rates set by Vector Media as a result of their illegal monopoly on this market and therefore lose out on this advertising opportunity even while the advertising space they seek to buy remains empty.

53.     After years of losing millions of dollars in revenue and failing to receive any reasonable response to its inquiries about why advertising revenue was inexplicably decreasing while potential advertising opportunities were increasing, Go New York decided to terminate the agreement granting Vector Media an exclusive license to all advertising on its fleet of buses on July 14, 2019.

54.     In response to Go New York's termination of Vector Media's exclusive license to sell advertising on Go New York's bus fleet, Vector Media commenced an action in New York Supreme Court, New York County by which it sought and obtained a preliminary injunction on the basis of its allegation that it would suffer irreparable harm if Go New York terminated the

agreement because Vector Media would lose its "market share", i.e. monopoly, over the discrete market for advertising on tour bus companies. Vector Media's lawsuit and representations to the Supreme Court were part and parcel of Defendants' concerted effort to obtain a complete monopoly over the market for advertising on double-decker tour buses and continue their anticompetitive activities.

55.    Even after Vector Media obtained a preliminary injunction to keep Go New York trapped in a contract granting Vector Media an exclusive license to sell valuable advertising space on Go New York's fleet of more than 40 buses, only one-third or less of the total advertising space has been sold by Vector Media. As a result, Vector Media maintains a complete monopoly over this discrete market for advertising space on double-decker tour buses and Go New York continues to lose substantial revenue that it could be earning but for Defendants' anticompetitive behavior.

56.    In addition to the lost revenue, Defendants' anticompetitive actions put Go New York at a distinct disadvantage to its competitors, Gray Line and Big Bus, who are able to earn this revenue through more favorable agreements with Vector Media and reinvest it in their business operations to the detriment of their competitor, Go New York.

57.    As a result of an injunction obtained by Vector Media on false pretenses, Go New York continues to lose this revenue that could be earned from advertising on its double-decker buses that run throughout New York City around-the-clock, seven days a week.

58.    Defendants' anti-competitive behavior also excludes small businesses who may want to advertise on double-decker tour buses but are effectively locked out of the market because they cannot afford to pay the exorbitant prices dictated by Vector Media. Indeed, the main advertisers to whom Go New York sells advertising to on double-decker tour bus

companies in New York City are major brands such as Apple, American Airlines, Budweiser, McDonalds, SONY Pictures, Brooks Brothers, Mattel, Tiffany's, as well as luxury brands such as Jaguar, Tiffany's, and Coach.

59.    In the meantime, Plaintiff Go New York has been approached by numerous potential advertisers with smaller companies and brands who would have purchased advertising on Go New York's fleet of tour buses but for Vector Media's monopoly on the market for advertising on double-decker tour buses.  These companies have been unable to fairly compete for (or even buy) available advertising space on Go New York's and its competitors' tour buses because of Defendants' monopolization of this market space.

60.    Plaintiff Go New York has also been harmed by Defendants' monopoly in this respect in that Go New York would have earned revenue from selling the two-thirds of advertising space to that remained empty to these smaller companies and brands but was unable to do so because Vector Media was keeping that space empty by virtue of the exclusive license for the sole purpose on maintaining its "market share" or, in other words, its monopoly over double-decker tour bus advertising.  Furthermore, Defendant Vector Media engaged in deceptive acts and practices in order to obtain exclusive licenses with all of the major double-decker tour bus companies in any one city, including New York City, and other major cities nationwide.

61.    With respect to Plaintiff, in late 2011, when Go New York was a small company that had not even begun running bus tours, Vector Media and its executives approached the CEO of Go New York (who was 27 years old at the time) and misrepresented that Vector Media would utilize its best efforts as Go New York's "partner" to maximize revenue from advertising sales on Go New York's buses if Go New York granted it an exclusive, ten-year renewable license to sell advertising on its buses.

62.     At the same time, Vector Media and its executives purposely concealed that the true purpose of the exclusive license which was to create a monopoly on tour bus advertising by having exclusive agreements with all of the major tour bus companies in New York City solely for Vector's benefit.  By doing so, Vector could further its scheme of taking control of the market and driving up the cost of advertising to its clients.

63.     As part of its fraud, Vector's executives also concealed the fact that Vector intended to and did (and continues to) provide more favorable treatment to Go New York's competitors by selling more advertising on their buses than Go New York and giving them optimal advertising opportunities such as illuminated LED and interior advertising that it has denied Go New York.

64.     Additionally, in furtherance of Defendants' attempts to monopolize the entire market for double-decker tour bus advertising, Defendants have been acquiring numerous competitor companies in an effort to control and dominate the relevant market for advertising on double-decker tour buses in major tourist destination cities across the country.

65.     On February 6, 2018, Defendants acquired Direct Media, reported to be, along with Vector Media, "also one of the nation's largest municipal transit advertising companies."[4] By this acquisition, Vector Media acquired an additional 12 offices and markets and nearly doubled its number of employees.  *Id.*

66.     In 2018, Defendants also made in-roads to control the market for double-decker tour bus advertising in Nashville, Tennessee and Milwaukee, Wisconsin.

67.     On February 13, 2019, Defendants acquired Happy Cog, a full-service digital marketing agency with locations in New York City and Philadelphia.

---

[4] https://oohtoday.com/vector-media-acquires-direct-media-now-50-market-coverage/.

68.     On May 1, 2019, Defendants acquired another OHH media company called Laurel Outdoor which is the exclusive municipal transit advertising partner of New Orleans, Jefferson Parish and St. Bernard Parish in Louisiana.  By this acquisition, Defendants added more than 160 buses, 60 street cars, and approximately 640 bus shelters to its "market share."  It was reported that the acquisition of Laurel Media "is another bold step for Vector who, in just two years, has added 35 transit markets to its portfolio (now 55 markets in total) and has nearly doubled in size to become one of the largest out-of-home media companies in the United States."[5]

### FIRST CLAIM FOR RELIEF
#### (Violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 1, 15)

69.     Plaintiff repeats, realleges and reincorporates the allegations of Paragraphs 1 through 68 as if set forth in their entirety herein.

70.     Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce."

71.     Defendant Vector Media possesses monopoly power in the relevant market of double-decker tour bus advertising in New York City, and other major tourist destination cities across the United States.

72.     As set forth above, Defendants Vector Media and Spire Capital, through their common ownership and control, have engaged in concerted action to prevent or impede competition in the discrete market for advertising on double-decker tour bus companies to the detriment of tour bus companies and advertisers.

---

[5] *see* https://vectormedia.com/press-release-laurel-outdoor/.

73.    Defendants Vector Media and Spire Capital have willfully acquired and/or maintained its monopoly power by taking acts to gain complete control over the discrete market for advertising on double-decker tour bus companies in major cities across the United States.

74.    Defendants' anticompetitive acts include targeting the major and up-and-coming tour bus companies that compete for the same tourist market in major cities across the country and locking each of them to enter into long-term exclusive licensing deals with Vector Media so that Vector Media could ensure that it would be the only company selling valuable advertising space on fleets of double-decker tour buses that run around-the-clock throughout the major cities in the United States including all interior and exterior advertising space on the fleets of large buses, special illuminated, LED light ads, and "bus wrapping".

75.    Defendants procured exclusive licensing deals with competitor tour bus companies by fraud and coercion.  Specifically, Defendants promised each tour bus company that it would be Vector Media's "business partner" and that Vector Media would work together with each tour bus company to generate the most revenue for both sides from advertising sales.

76.    In fact, these representations and omissions were false, known to be false to Defendants at the time they were made, and willfully made in order to further Defendants' scheme to create a monopoly on double-decker tour bus advertising in every major city across the United States so that they could dominate and control the market for advertising sales on double-decker tour buses.

77.    As a result, Defendants are able to set the market rate for all of the different kinds of advertising on double-decker tour bus companies and charge overinflated and supra-competitive prices for such advertising to the detriment of the advertisers and the tour bus companies.

78.     Due to Defendants' total and complete domination of the discrete market for advertising on double-decker tour bus companies, tour bus companies and advertisers are at the mercy of Vector Media.  Advertisers are forced to pay Vector Media's rate if they want access to this discrete advertising space.

79.     Additionally, as a result of Defendant's monopoly, if advertisers refuse to pay the rate demanded by Vector Media, the advertising space is unused and the tour bus companies lose out on substantial revenue that could have been made but for Defendants' illegal price-fixing.

80.     For instance, during the time that Defendant Vector Media has had the exclusive right to sell advertising on Go New York's bus fleet, more than two-thirds of the advertising space has gone unused and Go New York has lost out on revenue from the sale of advertising. During this time, Go New York has been approached directly by potential advertisers and although Go New York has referred them to Vector Media, no advertising space was purchased.

81.     Go New York has also been directly harmed by the fact that Defendants funnel advertising sales, including more lucrative and special campaigns to Go New York's competitors in order for Defendants to maximize the advertising revenue they earn at the expense of Go New York and in direct violation of Vector Media's assurances that it would act as Go New York's "business partner" to maximize revenue to both Vector Media and Go New York if Go New York granted it a ten year exclusive license to sell advertising on its fleet of buses with a right of renewal.

82.     Defendants Vector Media and Spire Capital have also willfully acquired and/or maintained their monopoly power by engaging in an ongoing and concerted effort to identify and acquire any other company that has attempted to impede on Vector Media's "market share" by

selling or attempting to sell advertising space on double-decker tour bus companies in order to maintain Defendants' domination of the market for double-decker tour bus advertising.

83.     Plaintiff Go New York has standing to enforce this claim in that: (i) it has suffered direct injuries as a result of Defendants' anticompetitive acts; (ii) it belongs to an identifiable class of persons, i.e. companies operating tour bus companies in major cities across the United States,   whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement activities; (iii) Go New York's damages based upon, *inter alia*, the two-thirds of unused advertising space on its fleet of tour buses are actual, and not speculative damages; and (iv) the amount of damages sustained by Go New York is readily available and can be apportioned to it so as to avoid duplicative recoveries.

84.     Defendants, by their aforesaid unlawful conduct, have caused actual injury to Go New York by causing it to lose millions of dollars in revenue and potential advertising customers and otherwise damaged its reputation and restrained its ability to compete with competitor tour bus companies who, *inter alia*, benefit from Go New York's lost advertising and revenue.

85.     As a result of an injunction obtained by Vector Media on false pretenses, Go New York continues to lose this revenue that could be earned from advertising on its double-decker buses that run throughout New York City around-the-clock, seven days a week.

86.     As set forth herein, Defendants have engaged in unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton Act, 15 U.S.C. § 15l.

87.     Pursuant to 15 U.S.C. § 15, Plaintiff is entitled to recover the amount of its actual damages plus interest.  Plaintiff Go New York suffered actual losses of millions of dollars in revenue that it could have otherwise earned but for Defendants' anticompetitive acts.

88.     In addition to its lost revenue, Plaintiff Go New York is entitled to threefold the damages it has sustained, the cost of suit, and attorneys' fees under 15 U.S.C. § 15, and any other damages to which it is entitled to the fullest extent permitted by law .

89.     Plaintiff Go New York also seeks an order enjoining Defendants' anti-competitive activities including, but not limited, to price-fixing and unfair dealing by obtaining an exclusive license to sell all advertising on Go New York's fleet of tour buses in New York City under false pretenses and cancellation of the exclusive license granted to Vector Media to sell advertising on all of its buses in New York City.

90.     Go New York has also been directly harmed by the fact that Defendants funnel advertising sales, including more lucrative and special campaigns to Go New York's competitors in order for Defendants to maximize the advertising revenue they earn at the expense of Go New York and in direct violation of Vector Media's assurances that it would act as Go New York's "business partner" to maximize revenue to both Vector Media and Go New York if Go New York granted it a ten year exclusive license to sell advertising on its fleet of buses with a right of renewal.

91.     The injuries suffered by Go New York were a direct result of Defendants' anticompetitive activities.

92.     The injuries suffered by Go New York are the type of injuries that that Federal and New York State antitrust laws were intended to prevent.

93.     Defendants' monopolization of the discrete market for advertising on double-decker tour bus companies was and is intentional and it is due to Defendants' anti-competitive activities and not the result of any growth or development as a consequence of a superior product, business acumen, or historic accident.

94.     As a result of Defendants' violations of Section 1 of the Sherman Act, Plaintiff Go New York has been injured in its business in that it has lost millions of dollars in revenue that it could have otherwise earned but for Defendants' anticompetitive acts. Pursuant to 15 U.S.C. § 15, Plaintiff is entitled to recover the amount of its actual damages plus interest.

95.     Plaintiff Go New York also seeks an order enjoining Defendants' anti-competitive activities including, but not limited, to price-fixing and unfair dealing by obtaining an exclusive license to sell all advertising on Go New York's fleet of tour buses in New York City under false pretenses.

## SECOND CLAIM FOR RELIEF

### (In the Alternative, Conspiracy to Monopolize in Violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act, 15 U.S.C. §§ 2, 15)

96.     Plaintiff repeats, realleges and reincorporates the allegations of Paragraphs 1 through 95 as if set forth in their entirety herein.

97.     Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce."

98.     From at least November 30, 2016 to the present, Defendants Vector Media and Spire Capital have conspired to monopolize the relevant market of double-decker tour bus advertising in New York City and other major cities across the United States.

99.     Defendants Vector Media's and Spire Capital's overt acts in furtherance of their conspiracy include, but are not limited to, targeting competing tour bus companies in the major tourist cities in the United States and locking all of them into long-term exclusive licensing deals by claiming that each of the tour bus companies would be Vector Media's "business partner" and that Vector Media would work together with each tour bus company to generate the most

revenue for both sides from advertising sales.  In fact, these representations and omissions were false, known to be false to Defendants at the time they were made, and willfully made in order to further Defendants' scheme to create a monopoly on double-decker tour bus advertising in every major city across the United States and maintain their "market share" so that they could dictate and inflate the cost of advertising on double-decker tour buses.

100.    Defendants Vector Media's and Spire Capital's overt acts in furtherance of their conspiracy also include but are not limited to, acquiring numerous competitor companies in an effort to control and dominate the relevant market for advertising on double-decker tour buses in major tourist destination cities across the country in an effort to entirely dominate and control this discrete market.  Vector Media executives refer to this as its "market share."

101.    Defendants unquestionably possess monopoly power in the relevant market for advertising on double-decker tour buses in major tourist destination cities across the country. Vector Media is the self-proclaimed "only coast-to-coast double decker advertising network in North America."[6]  As one reporter put it: "now when one thinks of [a] Double Decker Bus its more likely than not, a Vector Bus or assumed that any DD is Vector's."[7]

102.    Defendants Vector Media and Spire Capital have willfully conspired to acquire and/or maintain their monopoly power by taking the aforementioned acts to gain complete control over the discrete market for advertising on double-decker tour bus companies in major cities across the United States.

---

[6] https://vectormedia.com/press-release-laurel-outdoor/.

[7] https://oohtoday.com/vector-media-acquires-direct-media-now-50-market-coverage/.

103.    Defendants' have acted with the specific intent to monopolize the discrete market for advertising on double-decker tour bus companies and Defendants have conspired to engage in the aforementioned predatory and anticompetitive activity.

104.    As a result of Defendants' conspiracy, Plaintiff Go New York has been injured in its business in that it has lost millions of dollars in revenue that it could have otherwise earned but for Defendants' anticompetitive acts. Pursuant to 15 U.S.C. § 15, Plaintiff is entitled to recover the amount of its actual damages plus interest.

105.    As a result of Defendant's conspiracy, if advertisers refuse to pay the rate demanded by Vector Media, the advertising space is unused and the tour bus companies lose out on substantial revenue that could have been made but for Defendants' illegal price-fixing and other anticompetitive acts.

106.    For instance, during the time that Defendant Vector Media has had the exclusive right to sell advertising on Go New York's bus fleet, more than two-thirds of the advertising space has gone unused and Go New York has lost out on revenue from the sale of advertising. During this time, Go New York has been approached directly by potential advertisers and although Go New York has referred them to Vector Media, no advertising space was purchased.

107.    Go New York has also been directly harmed by the fact that Defendants funnel advertising sales, including more lucrative and special campaigns to Go New York's competitors in order for Defendants to maximize the advertising revenue they earn at the expense of Go New York and in direct violation of Vector Media's assurances that it would act as Go New York's "business partner" to maximize revenue to both Vector Media and Go New York if Go New York granted it a ten year exclusive license to sell advertising on its fleet of buses with a right of renewal.  As a result of the foregoing, Plaintiff has lost millions of dollars of advertising revenue

that it could have sold on at least two-thirds of the space on its more than 40 buses in New York City.

108.    Additionally, as a result of an injunction obtained by Vector Media on false pretenses, Go New York continues to lose this revenue that could be earned from advertising on its double-decker buses that run throughout New York City around-the-clock, seven days a week.

109.    In addition to its millions of dollars in lost revenue, Plaintiff Go New York is entitled to threefold the damages it has sustained, the cost of suit, and attorneys' fees under 15 U.S.C. § 15, and any other damages to which it is entitled to the fullest extent permitted by law.

110.    Plaintiff Go New York also seeks an order enjoining Defendants' anti-competitive activities including, but not limited, to price-fixing and unfair dealing by obtaining an exclusive license to sell all advertising on Go New York's fleet of tour buses in New York City under false pretenses and cancellation of the exclusive license granted to Vector Media to sell advertising on all of its buses in New York City.

### THIRD CLAIM FOR RELIEF
**(Violation of Section 2 of the Sherman Act and
Section 4 of the Clayton Act, 15 U.S.C. §§ 2, 15)**

111.    Plaintiff repeats, realleges and reincorporates the allegations of Paragraphs 1 through 110 as if set forth in their entirety herein.

112.    Section 2 of the Sherman Act makes it unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations . . ."

113.    Defendants Vector Media and Spire Capital have attempted to monopolize the relevant market of double-decker tour bus advertising in New York City and other major cities across the United States.

114.    Defendants Vector Media's and Spire Capital's anticompetitive acts in violation of Section 2 of the Sherman Act include, but are not limited to, monopolization and monopoly leveraging, or attempted monopolization in the alternative, price-fixing, and other predatory and anticompetitive acts designed to eliminate any competition in the discrete market for the sale of advertising on tour bus companies in major cities across the United States including, but not limited to, New York City.

115.    Defendants have engaged in predatory and/or anticompetitive conduct in an effort to monopolize the relevant market of double-decker tour bus advertising in New York City and other major cities across the United States by targeting competing tour bus companies in the major tourist cities in the United States and locking all of them into long-term exclusive licensing deals by claiming that each of the tour bus companies would be Vector Media's "business partner" and that Vector Media would work together with each tour bus company to generate the most revenue for both sides from advertising sales.  In fact, these representations and omissions were false, known to be false to Defendants at the time they were made, and willfully made in order to further Defendants' scheme to create a monopoly on double-decker tour bus advertising in every major city across the United States and maintain their "market share" so that they could dictate and inflate the cost of advertising on double-decker tour buses.

116.    Defendants also have engaged in predatory and/or anticompetitive conduct in an effort to monopolize the relevant market of double-decker tour bus advertising in New York City and other major cities across the United States by acquiring numerous competitor companies in

an effort to control and dominate the relevant market for advertising on double-decker tour buses in major tourist destination cities across the country in an effort to entirely dominate and control this discrete market.  Vector Media executives refer to this as its "market share."

117.    Defendants unquestionably possess monopoly power in the relevant market for advertising on double-decker tour buses in major tourist destination cities across the country. Vector Media is the self-proclaimed "only coast-to-coast double decker advertising network in North America."[8]  As one reporter put it: "now when one thinks of [a] Double Decker Bus its more likely than not, a Vector Bus or assumed that any DD is Vector's."[9]

118.    Defendants Vector Media and Spire Capital have willfully acquired and/or maintained its monopoly power by taking the aforementioned acts to gain complete control over the discrete market for advertising on double-decker tour bus companies in major cities across the United States.

119.    Defendants' monopolization of the discrete market for advertising on double-decker tour bus companies is due solely to Defendants' anti-competitive activities and not the result of any growth or development as a consequence of a superior product, business acumen, or historic accident.

120.    Alternatively, Defendants have attempted to monopolize the discrete market for advertising on double-decker tour bus companies by engaging in the aforementioned predatory and anticompetitive activity with a specific intent to monopolize that market and there is a dangerous probability that if Defendants have not yet achieved monopoly power, they will obtain

---

[8] https://vectormedia.com/press-release-laurel-outdoor/.

[9] https://oohtoday.com/vector-media-acquires-direct-media-now-50-market-coverage/.

such power imminently if their predatory and/or anticompetitive conduct is not enjoined by this Court.

121.    Pursuant to 15 U.S.C. § 15, Plaintiff is entitled to recover the amount of its actual damages plus interest.  Plaintiff Go New York suffered actual losses of millions of dollars in revenue that it could have otherwise earned but for Defendants' anticompetitive acts.

122.    Plaintiff Go New York has standing to enforce this claim in that: (i) it has suffered direct injuries as a result of Defendants' anticompetitive acts; (ii) it belongs to an identifiable class of persons, i.e. companies operating tour bus companies in major cities across the United States, whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement activities; (iii) Go New York's damages based upon, *inter alia*, the two-thirds of unused advertising space on its fleet of tour buses are actual, and not speculative damages; and (iv) the amount of damages sustained by Go New York is readily available and can be apportioned to it so as to avoid duplicative recoveries.

123.    During the time that Defendant Vector Media has had the exclusive right to sell advertising on Go New York's bus fleet, more than two-thirds of the advertising space has gone unused and Go New York has lost out on revenue from the sale of advertising.  During this time, Go New York has been approached directly by potential advertisers and although Go New York has referred them to Vector Media, no advertising space was purchased.

124.    Go New York has also been directly harmed by the fact that Defendants funnel advertising sales, including more lucrative and special campaigns to Go New York's competitors in order for Defendants to maximize the advertising revenue they earn at the expense of Go New York and in direct violation of Vector Media's assurances that it would act as Go New York's "business partner" to maximize revenue to both Vector Media and Go New York if Go New

York granted it a ten year exclusive license to sell advertising on its fleet of buses with a right of renewal.

125.    As a result of the foregoing, Plaintiff has lost millions of dollars of advertising revenue that it could have sold on at least two-thirds of the space on its more than 40 buses in New York City.

126.    In addition to its lost revenue, Plaintiff Go New York is entitled to threefold the damages it has sustained, and the cost of suit, and attorneys' fees under 15 U.S.C. § 15.

127.    Plaintiff Go New York also seeks an order enjoining Defendants' anti-competitive activities including, but not limited, to price-fixing and unfair dealing by obtaining an exclusive license to sell all advertising on Go New York's fleet of tour buses in New York City under false pretenses and cancellation of the exclusive license granted to Vector Media to sell advertising on all of its buses in New York City.

**FOURTH CLAIM FOR RELIEF**
**(In the Alternative, Conspiracy to Monopolize in Violation of**
**Section 2 of the Sherman Act and**
**Section 4 of the Clayton Act, 15 U.S.C. §§ 2, 15)**

128.    Plaintiff repeats, realleges and reincorporates the allegations of Paragraphs 1 through 127 as if set forth in their entirety herein.

129.    Section 2 of the Sherman Act makes it unlawful for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations . . ."

130.    Defendants Vector Media and Spire Capital have conspired to monopolize the relevant market of double-decker tour bus advertising in New York City and other major cities across the United States.

28

131.    Defendants Vector Media and Spire Capital have conspired to commit anticompetitive acts in violation of Section 2 of the Sherman Act include, but are not limited to, monopolization and monopoly leveraging, or attempted monopolization in the alternative, price-fixing, and other predatory and anticompetitive acts designed to eliminate any competition in the discrete market for the sale of advertising on tour bus companies in major cities across the United States including, but not limited to, New York City.

132.    Defendants Vector Media's and Spire Capital's overt acts in furtherance of their conspiracy include, but are not limited to, targeting competing tour bus companies in the major tourist cities in the United States and locking all of them into long-term exclusive licensing deals by claiming that each of the tour bus companies would be Vector Media's "business partner" and that Vector Media would work together with each tour bus company to generate the most revenue for both sides from advertising sales.  In fact, these representations and omissions were false, known to be false to Defendants at the time they were made, and willfully made in order to further Defendants' scheme to create a monopoly on double-decker tour bus advertising in every major city across the United States and maintain their "market share" so that they could dictate and inflate the cost of advertising on double-decker tour buses.

133.    Defendants Vector Media's and Spire Capital's overt acts in furtherance of their conspiracy include but are not limited to, acquiring numerous competitor companies in an effort to control and dominate the relevant market for advertising on double-decker tour buses in major tourist destination cities across the country in an effort to entirely dominate and control this discrete market.  Vector Media executives refer to this as its "market share."

134.    Defendants unquestionably possess monopoly power in the relevant market for advertising on double-decker tour buses in major tourist destination cities across the country.

Vector Media is the self-proclaimed "only coast-to-coast double decker advertising network in North America."[10]  As one reporter put it: "now when one thinks of [a] Double Decker Bus its more likely than not, a Vector Bus or assumed that any DD is Vector's."[11]

135.   Defendants Vector Media and Spire Capital have willfully acquired and/or maintained its monopoly power by taking the aforementioned acts to gain complete control over the discrete market for advertising on double-decker tour bus companies in major cities across the United States.

136.   Defendants' have acted with the specific intent to monopolize the discrete market for advertising on double-decker tour bus companies.  Among other things, Defendants have engaged in the aforementioned predatory and anticompetitive activity.

137.   As a result of Defendants' conspiracy, Plaintiff Go New York has been injured in its business in that it has lost millions of dollars in revenue that it could have otherwise earned but for Defendants' anticompetitive acts. Pursuant to 15 U.S.C. § 15, Plaintiff is entitled to recover the amount of its actual damages plus interest.

138.   In addition to its lost revenue, Plaintiff Go New York is entitled to threefold the damages it has sustained, and the cost of suit, and attorneys' fees under 15 U.S.C. § 15.

139.   Plaintiff Go New York also seeks an order enjoining Defendants' anti-competitive activities including, but not limited, to price-fixing and unfair dealing by obtaining an exclusive license to sell all advertising on Go New York's fleet of tour buses in New York City under false pretenses.

---

[10] https://vectormedia.com/press-release-laurel-outdoor/.

[11] https://oohtoday.com/vector-media-acquires-direct-media-now-50-market-coverage/.

**WHEREFORE**, plaintiff Go New York Tours Inc. demands judgment in its favor and against defendants Vector Media, LLC and Spire Capital Management, LLC, as follows:

A.      Awarding Go New York its actual damages and treble damages for violations of the Sherman and Clayton Acts;

B.      Awarding Go New York its costs of suit, including reasonable attorneys' fees, under the Clayton Act, and as may otherwise be permitted by law;

C.      Awarding Go New York interest under the Clayton Act, and as may otherwise be permitted by law; and

D.      Ordering Defendants to cease all anti-competitive activities and cancelling Vector Media's exclusive license to sell all advertising on Go New York's fleet of tour buses in New York City; and

E.      Defendants' anti-competitive activities including, but not limited, to price-fixing and unfair dealing by obtaining an exclusive license to sell all advertising on Go New York's fleet of tour buses in New York City under false pretenses.

F.      Such other and further relief as the Court may deem just and proper.

Plaintiff hereby demands a trial by jury of all claims and issues herein.

Dated: New York, New York
       October 31, 2019

**BARTON LLP**

By: _____
      Maurice N. Ross
      Laura-Michelle Horgan

711 Third Avenue, 14th Floor
New York, New York 10017
(212) 687-6262
mross@bartonesq.com

*Attorneys for Plaintiff*
*Go New York Tours Inc.*

31

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands

trial by jury of all issues raised by the foregoing Complaint.

Dated: New York, New York          **BARTON LLP**
      October 31, 2019

                                   By:_____
                                         Maurice N. Ross