```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
GO NEW YORK TOURS INC. d/b/a             :
"Topview,"                               :
                                         :      19cv10144 (DLC)
                              Plaintiff, :
                                         :      OPINION AND ORDER
             -v-                         :
                                         :
VECTOR MEDIA, LLC,                       :
                                         :
                              Defendant. :
                                         :
---------------------------------------- X
```

APPEARANCES

For plaintiff:
Maurice Newmark Ross
Laura-Michelle Horgan
Barton LLP
711 Third Ave., 14th Fl.
New York, NY 10017
(212) 687-6262

For defendant:
Brian Andrew Katz
Joseph B. Weiner
Olshan Frome Wolosky LLP
1325 Avenue of the Americas
New York, NY 10019
(212) 451-2300

DENISE COTE, District Judge:

Plaintiff Go New York Tours Inc. ("Go New York Tours"), which does business as Topview, commenced this lawsuit on October 31, 2019, alleging that Vector Media, LLC ("Vector Media") has obtained, or attempted to obtain, a monopoly over the market for advertising on double-decker tour buses across

the United States, in violation of § 2 of the Sherman Act, 15 U.S.C. § 2.  Pursuant to the motion brought by Vector Media, this antitrust action is dismissed because Go New York Tours lacks antitrust standing to bring the claims contained in its second amended complaint ("SAC").

## Background

The following facts are taken from the SAC, documents integral to the SAC, and documents of which judicial notice may be taken.[1]  They are assumed to be true for the purpose of addressing this motion.

Go New York Tours is one of three double-decker tour bus companies that operate in New York City.  Vector Media is an advertising company that specializes in out-of-home media advertising.  On November 28, 2011, Vector Media entered a Transit Advertising Agreement (the "Advertising Agreement") with Go New York Tours, which was amended and restated in 2014.  By its terms, it is set to expire in 2026.

Pursuant to the Advertising Agreement, Go New York Tours granted Vector Media the exclusive right to sell, post, and maintain advertisements on Go New York Tours' vehicles.  In exchange, Vector Media agreed to pay Go New York Tours the

---

[1] A court may take judicial notice of court documents, including documents filed in state court.  Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

2

greater of a guaranteed annual amount, or 50% of the net advertising revenue from each year.  The SAC alleges that Vector Media also has entered long-term, exclusive licensing contracts with the two other double-decker tour bus companies that operate in New York City.

In November 2016, Vector Media was acquired by Spire Capital Management, LLC ("Spire Capital").  Since that time, Vector Media has grown, including by acquiring a national municipal transit advertising company, a digital marketing agency with locations in New York City and Philadelphia, and an out-of-home media company based in Louisiana.

In July 2019, Go New York Tours attempted to terminate the Advertising Agreement in advance of its 2026 expiration date.  The SAC alleges that Go New York Tours took this action because, in the past five years, Vector Media has caused two-thirds of Go New York Tours' advertising space to go unused, reducing Go New York Tours' revenue from advertisements.

On July 1, 2019, to prevent Go New York Tours from terminating the Advertising Agreement, Vector Media sued Go New York Tours in New York Supreme Court, County of New York (the "State Court Action").  On July 31, Go New York Tours filed counterclaims for, among other things, fraudulent inducement and breach of the implied duty of good faith and fair dealing.  On August 12, Vector Media was granted a preliminary injunction

enjoining Go New York Tours from terminating the Advertising Agreement.  The State Court Action remains pending.

On October 31, 2019, Go New York Tours initiated this antitrust lawsuit against Vector Media and Spire Capital.  An amended complaint was filed on November 6.  On December 17, Vector Media and Spire Capital informed the Court of their intention to file a motion to dismiss the amended complaint and requested an extension of their deadline for doing so.  An Order of December 17 set January 14 as the deadline for filing the motion to dismiss and February 7 as the deadline for filing any amended complaint.  The December 17 Order stated that it was unlikely that Go New York Tours would have another opportunity to amend.  After the motion to dismiss was filed on January 14, Go New York Tours filed the SAC on February 7, terminating the January 14 motion to dismiss as moot.

The SAC alleges that Vector Media has obtained, or attempted to obtain, a monopoly over the market for advertising on double-decker tour buses across the United States, in violation of § 2 of the Sherman Act, 15 U.S.C. § 2.  It defines the relevant market as "advertising space on double-decker tour buses that operate in every city and state within the United States of America in which double-decker tour buses operate."  On February 28, 2020, Go New York Tours filed a stipulation of dismissal without prejudice as to Spire Capital.  The same day,

4

Vector Media moved to dismiss the SAC.  The motion became fully submitted on May 8.

## Discussion

Vector Media seeks dismissal of the SAC on the ground that Go New York Tours lacks antitrust standing to bring this action.[2] Section 4 of the Clayton Act establishes a private right of action for violations of the federal antitrust laws.  It entitles "[a]ny person who [is] injured in his business or property by reason of anything forbidden in the antitrust laws" to treble damages.  15 U.S.C. § 15.  Congress did not, however, "intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation."  Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C., 711 F.3d 68, 75 (2d Cir. 2013) (citation omitted).  Courts thus have imposed "boundaries" on the invocation of this private enforcement tool to ensure that an action for treble damages is invoked in service of "the purpose of the antitrust laws: to protect competition."  Id.

The limiting contours imposed over the right to pursue private actions for treble damages under Section 4 are "embodied in the concept of antitrust standing."  Id. (citation omitted).

---

[2] Because the plaintiff lacks standing to pursue this action, it is unnecessary to reach that portion of the motion to dismiss which argues that Go New York Tours has failed to state a monopolization claim under § 2 of the Sherman Act.

A plaintiff must demonstrate that it has antitrust standing to survive the pleading stage. IQ Dental Supply, Inc. v. Henry Schein, Inc., 924 F.3d 57, 62 (2d Cir. 2019) (citation omitted). To satisfy antitrust standing at the pleading stage, a plaintiff must plausibly allege two things: "(1) that it suffered a special kind of injury," known as antitrust injury, and "(2) that it is a suitable plaintiff to pursue the alleged antitrust violations and thus is an 'efficient enforcer' of the antitrust laws." Id. (citation omitted).

The Second Circuit has established a three-step test for determining whether a plaintiff has alleged an antitrust injury. Id. First, the court identifies the "practice complained of and the reasons such a practice is or might be anticompetitive." Id. (citation omitted). At this step, courts within this circuit must assume that the practice complained of is a violation of the antitrust laws. Gatt, 711 F.3d at 76 n.9 ("When assessing antitrust injury, we assume that the practice at issue is a violation of the antitrust laws."); see also Gelboim v. Bank of Am. Corp., 823 F.3d 759, 770 (2d Cir. 2016). Second, the court identifies the "actual injury the plaintiff alleges which requires [the court] to look to the ways in which the plaintiff claims it is in a worse position as a consequence of the defendant's conduct." IQ Dental Supply, 924 F.3d at 62 (citation omitted). And third, the court compares the

"anticompetitive effect of the specific practice at issue to the actual injury the plaintiff alleges." Id. (citation omitted).

Applying this test, Go New York Tours has not adequately alleged an antitrust injury.  The SAC alleges that Vector Media has obtained an unlawful monopoly over the relevant market, which is the advertising space on double-decker tour buses in the United States, by entering into exclusive licenses with double-decker tour bus companies.  Using that monopoly power, Vector Media extracts exorbitant rates from advertisers.  This injures advertisers by locking out those advertisers who cannot pay the artificially high monopoly prices.  This has harmed Go New York Tours by leaving empty "vast amounts" of advertising space on its bus fleet, which lowers Vector Media's payments to Go New York Tours under the terms of the Advertising Agreement.  The SAC alleges as well that to maintain its monopoly in the relevant market, Vector Media has acquired competitors.  As a result, it controls advertising in 27 of the top 35 media markets in the relevant market.

Go New York Tours has identified the anticompetitive practice as Vector Media's entry into exclusive dealing agreements.  Exclusive dealing arrangements are presumptively valid.  E & L Consulting, Ltd. v. Doman Indus. Ltd., 472 F.3d 23, 30 (2d Cir. 2006).  But a court must assume for purposes of the standing inquiry that the identified anticompetitive

7

practice is unlawful, and the practice at issue here -- exclusive dealing arrangements -- may, under "proper proof and pleading," be "scrutinized under the antitrust laws." Balaklaw v. Lovell, 14 F.3d 793, 800 (2d Cir. 1994) (citation omitted).

Assuming, therefore, that the anticompetitive conduct identified by Go New York Tours is unlawful, it would only be so because of the harm it causes to advertisers, not to Go New York Tours.  See Gatt, 711 F.3d at 77.  The deficiency in Go New York Tours' theory is underscored by considering a market in which Vector Media would have competitors.  In that competitive market, advertisers would have access to a number of different companies selling advertising space on tour buses.  Under Go New York Tours' theory, that competition among sellers would allow advertisers to find advertising space for lower prices instead of the "exorbitant" prices charged by Vector Media.  But, a competitive market would not aid Go New York Tours.  In the first place, the presence of those competitors to Vector Media would not relieve Go New York Tours of its contractual obligations to Vector Media under the Advertising Agreement. Beyond that, it is not clear that the competition, which would presumably result in lower payments for advertising space, would increase the revenue stream to Go New York Tours.  Thus, even if the antitrust laws are assumed to prevent Vector Media from entering exclusive, long-term contracts with all tour bus

8

companies across the country because of the harm such contracts may cause to competition, these laws are not concerned with the type of injury alleged by Go New York Tours, which is a product of its participation in one of the very contracts, the Advertising Agreement, that it challenges as illegal.[3]

Stated simply, Go New York Tours' injury flows from the Advertising Agreement and is contractual in nature.  This becomes apparent by assuming away the existence of the Advertising Agreement, or even by changing its terms.  Absent the Advertising Agreement, Go New York Tours would be free to sell the advertising space on its tour buses directly to advertisers.  Go New York Tours also could negotiate new terms with Vector Media that could require Vector Media to maximize the amount of space it leases to advertisers.  New contractual terms also could prohibit Vector Media from rejecting advertising offers absent Go New York Tours' consent.  The complaint alleges no factual allegations that would preclude these myriad possibilities, and, notably, Go New York Tours has not cited, nor could the Court find, any case in which a party to an exclusive dealing contract was found to have experienced

---

[3] The SAC also alleges that Vector Media used its market power to "induce" double-decker tour bus companies to accept lower compensation from Vector Media than they would in a competitive market.  This allegation is wholly conclusory and unsupported by any factual content.

antitrust injury based on a harm resulting from its own participation in such a contract.

In sum, Go New York Tour's allegations fail to demonstrate injury "of the type the antitrust laws were intended to prevent and that flows from that which" allegedly make Vector Media's acts unlawful. Gatt, 711 F.3d at 78 (citation omitted). Go New York Tours, therefore, does not have antitrust standing to pursue these claims.

## Conclusion

Vector Media's February 28, 2020 motion to dismiss is granted. The Clerk of Court shall close this case.

Dated: New York, New York
June 16, 2020

_____
DENISE COTE
United States District Judge